**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ARTHUR RODGERS                                    *

      v.                                        *                    Civil No. CCB-11-1585

BOBBY SHEARIN, *et al.*                      *
                              **\*\*\*\*\*\***

**<u>MEMORANDUM</u>**

       Plaintiff Arthur Rodgers brings this self-represented action against Warden Bobby

Shearin, Sgt. Sires, Sgt. Bowman, Ofc. Stevens, Lt. Wilt, Ofc. Mallow, Ofc. Raley (the

"correctional defendants"), and Physician's Assistant Greg Flury. ECF Nos. 1, 3 & 9. Pending

are defendants' motions to dismiss or, in the alternative, for summary judgment. ECF Nos. 21 &

24. Rodgers has responded.[1] ECF No. 40. After review of the record, the court finds a hearing is

not necessary. *See* Local Rule 105.6 (D. Md. 2011).

**BACKGROUND**

       Arthur Rodgers ("Rodgers"), a state inmate confined at the North Branch Correctional

Institution ("NBCI") in Cumberland, Maryland, filed a 42 U.S.C. § 1983 complaint for

injunctive relief. His original complaint, subsequently amended, alleged that he has a severe

wool allergy. ECF. No. 1. He states that doctors have notified correctional officials that he

cannot be housed in a cell where he will be exposed to wool. He states that on March 8, 2011,

defendant Sires, Officer Vanmetter, and an unidentified correctional officer told Rodgers that his

---

[1] In considering Rodgers's claim, the court has reviewed each of Rodgers's filings, including all of the
attachments/exhibits filed with his numerous motions for injunctive relief and letters to the court. *See, e.g.*, ECF Nos.
36, 37, 38, 39, 41, 42, 43, 44, 46, 48, & 51. Rodgers is not permitted to expand his claim to include his new
allegations of excessive force, enticement of other inmates to violence against Rodgers, mail tampering, improper
cell assignments, denial of hygiene items, and improper handling of his administrative remedy requests. The
allegations raised by Rodgers in the plethora of filings with the court involve several correctional employees not

"medical papers [had] expired and [he] would be getting a cellmate." Inmate Glover, who possessed a wool blanket and wool coat, moved into Rodgers's cell. Rodgers states that he immediately experienced an adverse allergic reaction and asked Vanmetter to contact the medical department but Vanmetter refused, indicating he would notify Sires of Rodgers's request. Rodgers contends that correctional staff repeatedly attempted to have inmates with wool materials moved into his cell, and that Sires advised him that he was not concerned with the medical orders as Nurse Steven Bray had advised correctional staff that as long as Rodgers did not touch the wool he would be fine. Rodgers alleges that correctional staff retaliated against him for filing law suits by having inmates with wool material moved into his cell.

Rodgers also alleges Glover had a history of mental illness, Glover was classified to single cell status due to the nature of his mental health problems, and Sires, Mallow and Raley threatened to lock Rodgers in "the filthiest cage we can find" if he refused housing with Glover. He states that when he advised correctional staff of his wool allergy Sires, Mallow and Raley conspired with PA Flury to "construe a document" as justification for disregarding the standing medical orders of Drs. Ottey, Espina, and Arnaout. He states defendants Raley and Mallow referred to previous lawsuits Rodgers had filed and indicated their contempt for same. Rodgers alleges that when he attempted to file an administrative grievance, defendants Bowman, Wilt and Stevens refused to process it.

Rodgers states he was seen by medical staff on March 11, 2011 due to his complaint of chest pains and states he was provided a shot of Benadryl and a steroid and returned to his cell with Glover. Later, Rodgers showed his paperwork to Officer Rininger, who spoke to Sgt.

---

named or served. Additionally, the allegations exceed the scope of the complaint before the court.

Hughes. Hughes ordered Rodgers out of his cell after verifying paperwork stating Rodgers should not be housed with an inmate with wool and that Glover should not be housed with another inmate.

Rodgers states that on March 14, 2011, defendant Stevens lodged a notice of rule violation against him alleging he was out of bounds. Rodgers states he "accepted" a 20 day cell restriction in order to avoid being placed in housing unit 1 and having Sires destroy his records.

Rodgers claims that defendant Flury has "conspired to undermine and otherwise interfere with the medical orders, diagnosis and recommendations of several medical doctors." Rodgers states that correctional employees have referred to an unidentified medical staff member who has advised them that Rodgers can be housed with another person in possession of wool materials. Rodgers states that he has "come to believe that Flury has agreed to use his position as midlevel medical staff person to support the actions of custodial staff." Rodgers claims that Flury deleted a medical entry made by Dr. Ottey on October 1, 2011, which referenced Rodgers's wool allergy and continued need for a wool free cell.

The evidence in the record demonstrates that Rodgers has been diagnosed with a wool allergy at least since June 18, 2009. ECF No. 24, Ex. 1. Medical personnel recommended Rodgers be housed in a cell where he would not be exposed to wool used by another inmate. *Id.*, Ex. 2.  On March 1, 2011, Rodgers was evaluated by medical personnel because of his request for single cell status due to his concern of being housed with another inmate who would use wool. *Id.*, Ex. 1. At that time Rodgers reported he had not experienced an allergic reaction since April 8, 2010. Rodgers notes he had been single celled during that time and therefore not exposed to wool. The medical report concluded that there was "no medical justification to

3

warrant a single cell," as Rodgers could be accommodated by providing any cellmate with a non-wool blanket. *Id.*

It is well documented that Rodgers has attempted to obtain single cell status for many years citing his general belief he should be single celled. *Id.*, Ex. 3. Rodgers has been evaluated for single cell status multiple times and repeatedly found ineligible by a committee of psychology staff as well as medical personnel. *Id.*

Although not required to live in a single cell, Rodgers was housed alone prior to March 8, 2011. *Id.*, Ex. 4. On that date inmate Ernest Glover was moved into Rodgers's cell due to "institutional needs." *Id.*, Exs. 5 & 6. The next day, Rodgers filed a Request for Administrative Remedy ("ARP") stating that an inmate with a wool blanket had been placed in his cell in contravention of his medical orders. He requested to be return to single cell status. *Id.*, Ex. 7. Warden Shearin responded noting that correctional staff were made aware of Rodgers's allergy and Glover was provided a blanket without wool. *Id.* Rodgers disputes that Glover was provided a non-wool blanket, but Glover was moved out of the cell three days later.

On March 11, 2011, Rodgers was seen by medical personnel due to his complaints of chest pain. Medical records reflect that Rodgers presented with a "wheezy cough" when upright which resolved when he was supine. He was not suffering from bilateral wheezing, rhonchi or stridor, and was able to converse normally. *Id.*, Ex. 8. He was diagnosed as "acute chest syndrome--? Allergic vs. malingering." *Id.* Rodgers was provided Solu-medrol and Benadryl for his symptoms *Id.* Glover was moved to a different cell that day. *Id.*, Ex. 6.

Rodgers refused to attend a medical evaluation on March 14, 2011. *Id.*, Exs. 4 & 9. Medical reports from that date note that Rodgers was to receive a new cellmate with related

allergies. *Id.*, Ex. 9.

On March 16 and 17, 2011, two different inmates were briefly assigned to Rodgers's cell, but they were reassigned the same day due, in part, to Rodgers's requests. ECF No. 40, Rodgers Decl..

On May 20, 2011, Rodgers was moved into a cell with inmate Wayne Holder, who also suffers from wool allergies. ECF No. 24, Ex. 5. On July 6, 2011, Rodgers requested to be moved to another cell. *Id.* Holder was removed from Rodgers's cell on August 16, 2011. *Id.* On September 23, 2011, Rodgers was moved from Housing Unit 2 to Housing Unit 3. *Id.*, Exs. 5 & 10. Since that time Rodgers had not complained regarding his assignment. Lt. Robert Fritz avers that he spoke with Rodgers on March 14, 2012, and was advised that Rodgers was satisfied with his housing assignment. *Id.*, Ex. 10.

## STANDARD OF REVIEW

The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick,* 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F. Supp. 2d 551, 556 (D.Md. 2003). The parties, however, "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). The requirement of "reasonable opportunity" means that all parties must be provided with notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment, which can be satisfied when a party is

"aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177

(4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th

Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious").

Rodgers had adequate notice that the defendants' motion might be treated as one for

summary judgment. The motion's alternative caption and attached materials are in themselves

sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Moreover, Rodgers referred to the motion in

his opposition brief as one for summary judgment and submitted additional documentary

exhibits.  Therefore, the court will consider the affidavits and additional materials submitted by

the parties and will treat the motion of the defendants as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted

"if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified

that this does not mean that any factual dispute will defeat the motion. "By its very terms, this

standard provides that the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive

law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## ANALYSIS

### A.    Exhaustion

Correctional defendants maintain that Rodgers's case against them should be dismissed in its entirety due to Rodgers's failure to exhaust available administrative remedies.  The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Rodgers's allegations. His complaint must be dismissed, "unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense." *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners "pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process." *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Chase*, 582 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; COMAR § 12.07.01.01–.03.

The material facts regarding Rodgers's efforts to exhaust his administrative remedies are not in dispute. Rodgers filed an ARP with the Warden at NBCI on March 9, 2011. ECF No. 24, Ex. 7. The Warden dismissed the ARP as meritless on March 31, 2011. *Id.*  No appeal of that dismissal was ever filed with the Maryland Division of Corrections Administrative Remedies Procedure Headquarters. *Id.*, Ex. 15. Rodgers's allegations that staff failed to process other ARP requests (ECF No. 40) are immaterial in considering whether Rodgers noted an appeal of the Warden's dismissal of the March 9, 2011 ARP. Rodgers does not allege that he attempted to

appeal the Warden's adverse determination but was blocked from doing so by correctional staff. Accordingly, Rodgers's complaint against the correctional defendants is subject to dismissal. Nevertheless, as discussed below, even if Rodgers had properly exhausted his administrative remedies, the defendants are entitled to summary judgment.

## B.    Respondeat Superior

Rodgers has failed to allege any action on the part of Warden Shearin. Rodgers's claims against him are therefore subject to dismissal. *See, e.g.*, *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing cause of action against official where plaintiff failed to allege any personal connection between the official and the denial of plaintiff's constitutional rights).

To the extent Rodgers alleges that Warden Shearin was responsible for overseeing staff, such a claim is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Rodgers, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by

9

Rodgers. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Rodgers has pointed to no action

or inaction on the part of Warden Shearin that resulted in a constitutional injury, and his claims

against him shall be dismissed.

**C.      Failure to Protect**

The gravamen of Rodgers complaint is that his right to be free from cruel and unusual

punishment has been violated due to prison officials' failure to protect him from a risk of harm

caused by other prisoners. The Eighth Amendment does recognize this right. *See Belcher v.*

*Oliver*, 898 F.2d 32, 33-34 (4th Cir. 1990).

As noted by the Supreme Court in *Farmer v. Brennan*:

Prison officials have a duty . . . to protect prisoners from violence at the hands of
other prisoners. Having incarcerated persons with demonstrated proclivities for
antisocial criminal, and often violent, conduct, having stripped them of virtually
every means of self-protection and foreclosed their access to outside aid, the
government and its officials are not free to let the state of nature take its course.
Prison conditions may be restrictive and even harsh, but gratuitously allowing the
beating or rape of one prisoner by another serves no legitimate penological
objective any more than it squares with evolving standards of decency. Being
violently assaulted in prison is simply not part of the penalty that criminal
offenders pay for their offenses against society.

511 U.S. 825, 833 (1994) (internal quotations and citations omitted). In a failure to protect claim,

a prisoner must show, first, that the harm he suffered was objectively serious, and second, that

prison officials acted with deliberate indifference. *Id.* at 834.

Assuming Rodgers's injury, an allergic reaction to wool in his cell,[2] is considered

objectively serious, Rodgers has failed to satisfy the subjective prong of a failure to protect

claim. Deliberate indifference in the context of a failure to protect claim means that a defendant

---

[2] Flury avers that any allergic to reaction would manifest as dermatitis not as respiratory distress, and notes that there
were no objective findings of an allergic reaction. ECF No. 21, Ex. B.

"knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

There is simply no evidence before the court that defendants were deliberately indifferent to Rodgers's safety. While Rodgers avers that he notified correctional staff of his wool allergy and that he could not be housed with an inmate who possessed wool, there is simply no evidence to show that defendants appreciated the risk of harm to Rodgers caused by the allergy and consciously disregarded same. The assignment of inmates to a particular cell was not within the control of the named officers. Additionally, efforts were made to verify Rodgers's allergy and the order regarding his housing. Three days after Glover was moved into the cell, action was taken to remove the allergen from the cell. Subsequently Rodgers was assigned a cellmate with the same allergy. The record evidence does not demonstrate that it was foreseeable to defendants, not privy to Rodgers's medical record, that Rodgers would be endangered by housing Glover in his cell. There is no evidence that defendants in fact made the required inference that Rodgers was in danger, despite Rodgers alerting them that he suffered from a wool

allergy.[3]

Assuming defendants were aware of a risk of harm to Rodgers, reasonable efforts were made to avoid the risk by removing Glover from the cell and by later providing Rodgers a cellmate who suffered from the same allergy. Rodgers, as the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Rodgers has failed to submit evidence to support his claim, or to put the material fact of this case—the failure to protect—in dispute.

**D.      Preliminary Injunction**

"'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Id*. (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). An actual controversy must exist at all times while the case is pending. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Where developments occur during the course of a case which prevent the court from being able to grant the relief requested, the case must be dismissed. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not

---

[3] Rodgers indicates that, in August 2012, correctional officers not named in the instant complaint advised Rodgers's cellmate (who had previously been provided a non-wool blanket) that they were not required to provide him a non-wool blanket as the medical order only applied to Rodgers. ECF No. 44. Rodgers later offers that his cellmate was

pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained . . ." *See Lewis v. Continental Bank Corp*, 494 U.S. 472, 480 (1990). "[O]ne such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).

To the extent Rodgers seeks injunctive relief, his request has been rendered moot. Since the filing of the complaint, Rodgers's cellmate was removed from the cell and Rodgers was transferred to a different tier. Rodgers has indicated his satisfaction with his housing arrangements. Accordingly, the motions for injunctive relief (ECF Nos. 1, 36, & 44) shall be dismissed as moot.

Even if Rodgers's request is not deemed moot, he has failed to satisfy the requirements to be provided injunctive relief. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Dewhurst v. Century Aluminum Co*., 649 F.3d 287, 290 (4th Cir. 2011) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008)). Rodgers claims his request for injunctive relief should not be dismissed as moot and renews his request that this court enter an Order requiring he be single celled due to his wool allergy. The medical records demonstrate single cell status is not required. The record before the court, including Rodgers's own declarations, evidence that defendants have endeavored to house him with other inmates

---

provided a non-wool blanket.  ECF No. 48.

who suffer wool allergies as well as with other inmates who have been given non-wool blankets. Nothing more is required. Rodgers's request for injunctive relief shall be denied, as he cannot clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted.

**E.      Retaliation**

In order to prevail on a claim of retaliation, Rodgers "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

Rodgers maintains that defendants housed him with inmate Glover, denied him medical care, and refused his request for administrative relief in retaliation for his having filed previous lawsuits. In order to maintain a claim for retaliation for the exercise of the right to access the courts, Rodgers must allege sufficient facts to indicate that the alleged retaliation resulted in some adversity to him sufficient to warrant concern about a chilling effect on the exercise of his right to access the courts. *See American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993); *see also Ashann-Ra v. Commonwealth of Va*., 112 F. Supp. 2d 559, 574 (W.D. Va. 2000). The court does not find that the conduct alleged demonstrates a chilling effect on Rodgers. To the contrary, Rodgers amended the instant complaint to include additional claims of retaliation and has filed additional proceedings.

Additionally, Rodgers has not demonstrated that the named individuals were responsible for assigning Glover to Rodgers's cell. Housing decisions are not made by correctional officers but rather are made based upon institutional needs. ECF No. 24, Ex. 12, ¶ 4. Rodgers points to "snide" comments made by correctional staff regarding the difficulty in housing him, deriding

14

him for being "Perry Mason," discussing their knowledge of his prior efforts to obtain single cell status, and making statements that doctors are "full of shit" in support his retaliation claim. ECF No. 40. Such comments, however, simply do not support Rodgers's claim that these defendants intentionally manipulated his housing in an effort to harm him in retaliation for previous litigation concerning his housing assignment.

Moreover, the record evidence demonstrates that, contrary to Rodgers's allegations, he did receive medical care for his allergic reaction. Rodgers was seen by medical staff three days after Glover was moved into Rodgers's cell. ECF No. 24, Ex. 8. Additionally, Glover was moved out of the cell within three days and the next inmate placed with Rodgers also had a wool allergy. *Id.*, Exs. 5 & 6.

The record evidence also contradicts Rodgers's bald allegations that his administrative remedy requests were not processed. Rodgers's March 9, 2011 ARP is stamped and signed, indicating it was received by the Institutional ARP Coordinator on March 11, 2011. *Id.*, Ex. 7. Additionally, Rodgers's administrative remedy was ruled upon the Warden and corrective action was taken, thus undermining Rodgers's contention that defendants refused to process this ARPs. Correctional defendants aver that they did not interfere with Rodgers's ARP process and have not taken any action to harass, threaten or retaliate against Rodgers. *Id.*, Ex. 5, 11, 12, 13, and 15.

"'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)). Mere conclusory averments, as provided by Rodgers in the instant case, are insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

15

Rodgers was provided medical care, his ARP was processed, and his wool allergy accommodated, all within three days of Glover being placed in the cell with him. Under these circumstances the court does not find that Rodgers was subjected to retaliation.

**F.      Denial of Medical Care**

       To the extent Rodgers claims he was denied adequate medical care, his claim also fails. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Rodgers must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Rodgers was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer*, 511 U.S. at 825.

       Rodgers cannot prove that any defendant acted with "subjective recklessness" in the face of a serious medical condition. *See Id.* at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  If the requisite subjective knowledge is established, an official may avoid

liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

On March 1, 2011, Rodgers was seen by defendant Flury in response to a sick call slip. ECF No. 21, Ex. A, p. 7-10; Ex. B. Rodgers did not complain of any symptoms but rather requested single cell status due to his wool allergy. The chart review conducted at that time revealed no recent complaints of allergic symptoms. Flury advised Rodgers that there was no clinical indication for single cell status. He further noted that Rodgers's mental health file revealed Rodgers's efforts to garner single cell status. *Id*.

Rodgers filed duplicative sick call slips on March 8 and 9, 2011, stating that he had a documented wool allergy and had been exposed to wool since March 8, 2011. He stated that he was suffering difficulty breathing, persistent coughing, and bloody phlegm. *Id*., Ex. A, p. 5-6. Rodgers was examined by Flury on March 11, 2011. Examination of Rodgers's lung revealed clear sounds; breathing was free of wheezing, stridor, rales, and rhonchi. No tenderness of the chest wall was noted. Rodgers displayed a wheezy cough when upright but was able to converse normally while sitting, standing, and laying down. No bloody phlegm was present. Although no objective findings of an allergic reaction were observed, he was provided Solu-mederol and Benadryl.[4] *Id*., p. 11-13. Rodgers was scheduled for a provider visit on March 14, 2011 but

---

[4] Flury further avers that based on his training, education and experience it is his belief that a wool allergy presents in the form of dermatitis rather than an adverse respiratory reaction. ECF No. 21, Ex. B. Based on Rodgers's history in demanding single cell status and the objective findings regarding Rodgers's complaint of allergic reaction, Flury believed Rodgers was attempting to gain single cell status. *Id*.

refused to attend the appointment.[5] *Id.*, p. 14; Ex. B. On that same date he filed a sick call slip requesting to see a physician regarding his allergies. He offered no specific complaints of difficulty breathing or other conditions. *Id.*, p. 2.  Rodgers was reexamined on March 22, 2011. He reported his symptoms had subsided and advised that his housing situation had changed. *Id.*, p. 16.

Rodgers's allegation that he was not provided necessary medical treatment for his allergic reaction is contradicted by the record. The evidence before the court demonstrates that Rodgers has received constitutionally adequate medical care. Rodgers has been evaluated regularly regarding his complaints and provided medication. Notes have been made in his medical file that he should not be housed in a manner that exposes him to wool.

In granting summary judgment to defendants, the court does not imply that Rodgers is not entitled to medical treatment.  The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Rodgers's assertion that Flury lacks the authority or qualifications to treat him is unavailing. Flury is properly licensed and credentialed to provide treatment as a physicians' assistant. ECF No. 21, Ex. C. Rodgers may not dictate whether treatment is provided to him by a nurse, physician's assistant, or physician.  There are no exceptional circumstances in this case. Rodgers has been evaluated and provided appropriate medication. At his last evaluation, he advised medical staff that his symptoms had resolved. Accordingly, defendant Flury is entitled to summary judgment as to Rodgers's Eighth

---

[5] Rodgers states he was unaware he was scheduled to be seen by medical personnel. ECF No. 21, Ex. A, p. 2.

Amendment claim.

**G.     Conspiracy**

Rodgers also claims that defendant Flury conspired with correctional staff to violate his constitutional rights. To establish a civil conspiracy under § 1983, Rodgers must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Rodgers alleges that Flury conspired with correctional officers by telling them that Rodgers could be housed in a cell with wool, despite medical orders to the contrary. Rodgers's bald allegation finds no support in the record. Rodgers claims that correctional staff told him that an unidentified medical employee authorized his placement in a cell with wool. Rodgers merely stacks assumptions in claiming that it was Flury who made the statement and that he did so knowing that Rodgers had a medical order not to be housed in a cell with wool. There is no evidence supporting these allegations—or any evidence of wrongdoing in this case. Thus, there is no conspiracy. Accordingly, Rodgers's claim of conspiracy shall be dismissed.

## CONCLUSION

For the reasons stated above, the motions to dismiss, construed as motions for summary judgment, shall be granted. A separate Order follows.


March 21, 2013                                  /s/
          Date                                   Catherine C. Blake
                                                 United States District Court

19